IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| RUSSELL MARKS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>UNITED STATES )<br>DEPARTMENT OF JUSTICE, )<br>)<br>Defendant. ) | Case No. 13-3380-CV-S-ODS |

ORDER AND OPINION (1) GRANTING IN PART DEFENDANT'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT AND (2) DIRECTING DEFENDANT TO TO SHOW CAUSE WHY JUDGMENT SHOULD NOT BE ENTERED IN PLAINTIFF'S FAVOR

This case arises under the Freedom of Information Act ("FOIA"). In summary, Plaintiff has been sentenced to serve a life sentence; while serving the sentence he provided information that he hoped would motivate the United States Attorney to move for a sentence reduction. The Assistant United States Attorney assigned to the matter (AUSA Cindy Hyde, or "AUSA Hyde") declined to file the motion. Plaintiff has initiated several proceedings in an attempt to obtain an order requiring AUSA Hyde to file a motion for downward departure; these efforts have failed. Two of the adverse decisions were appealed, and both were affirmed. See United States v. Marks, 768 F.3d 1215 (8th Cir. 2014); United States v. Marks, 244 F.3d 971 (8th Cir. 2001).

Plaintiff has also initiated a FOIA request seeking the names and titles of all Bureau of Prison ("BOP") personnel AUSA Hyde spoke to, the dates of those communications, and any other notes, documents, or records related to those communications. The Department of Justice ("DOJ") has identified three categories of documents responsive to Marks's FOIA request: (1) seven pages of AUSA Hyde's handwritten notes from a telephone log (which also includes notes about unrelated cases and matters), (2) a two-page letter AUSA Hyde sent to a BOP Official, and (3) a one-page document AUSA Hyde prepared reflecting the dates of her contacts with BOP officials, but no other information. The last document, which was prepared specially to

respond to Marks's FOIA request, is the only document provided to Marks. The DOJ contends the other two document categories are protected by two FOIA exemptions: Exemption 7(C) and Exemption 7(F). On October 14, 2014 the Court granted Marks's motion for *in camera* review, explaining in part that its analysis of the DOJ's pending Motion to Dismiss or for Summary Judgment would be aided by the endeavor.[1] The Court has reviewed the documents *in camera* and considered the DOJ's arguments *de novo*. The DOJ's motion (Doc. # 23) is granted in part, and the DOJ is directed to show cause why judgment should not be entered in Marks's favor.

I.

"FOIA generally mandates broad disclosure of government records. Congress has recognized, however, that some information must remain confidential and has created nine exceptions to FOIA's general disclosure principles." Central Platte Natural Res. Dist. v. U.S. Dep't of Agric., 643 F.3d 1142, 1146 (8th Cir. 2011) (citations omitted). Once the party seeking disclosure has exhausted his administrative appeals, "the court shall determine the matter de novo . . . and the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B).

The Department of Justice ("DOJ") argues that Exemptions 7(C) and 7(F) justify its decision not to disclose AUSA Hyde's notes and letter.[2] These exemptions apply to

---

[1] The Court agrees with the Eleventh Circuit that these issues are to be resolved on summary judgment (as opposed to a motion to dismiss). Miccousukie Tribe of Indians of Florida v. United States, 516 F.3d 1235, 1243 (11th Cir. 2008). The Court also notes there are a multitude of cases from other courts approving the use Rule 56 as opposed to Rule 12 in this context. E.g., Missouri Coalition for the Environment Foundation v. United States Army Corp of Engineers, 542 F.3d 1204, 1209 (8th Cir. 2008).

[2] The DOJ's initial response to Marks relied upon Exemptions 5(B) and 7(C) and Exemption J(2) under the Privacy Act of 1973. Marks pursued his administrative remedies and the agency's final decision relied instead on only Exemptions 7(C) and 7(F). The DOJ intimates that it is not limited to relying on Exemptions 7(C) and 7(F). Assuming without deciding that the DOJ is correct, the fact remains that the only arguments the DOJ has presented to the Court are predicated on Exemptions 7(C) and 7(F). Even if the DOJ could have presented other arguments, the fact is that it did not – and the Court will similarly limit its analysis to the arguments the DOJ has presented.

2

"records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information"

        \*   \*   \*

 (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy

        \*   \*   \*

 (F) could reasonably be expected to endanger the life or physical safety of any individual.

5 U.S.C. § 552(b)(7). The DOJ does not suggest the records in question are not "records or information compiled for law enforcement purposes, but argues Exemptions 7(C) and 7(F) apply. The Court agrees Exemption 7(C) justifies withholding *some* of the information, and there is no need to address Exemption 7(F).

 Exemption 7(C)'s protection of "personal privacy" is be construed broadly. E.g., National Archives & Records Admin v. Favish, 541 U.S. 157, 165-66 (2004); see also Hulstein v. Drug Enforcement Admin., 671 F.3d 690, 695-96 (8th Cir. 2012). "[T]he statutory privacy right protected by Exemption 7(C) goes beyond the common law and the Constitution." Favish, 541 U.S. at 170. The DOJ contends these officials are potentially subject to harassment, which justifies hiding their identities. Case law supports this position. The Eighth Circuit has "upheld the withholding of names of state and local law enforcement personnel from FBI reports noting that these persons have well-recognized and substantial privacy interests in the withheld information." Hulstein, 671 F.3d at 696 (internal quotations omitted). "'[T]hese individuals have a substantial interest in the nondisclosure of their identities and their connection with particular investigations because of the potential for future harassment, annoyance, or embarrassment.'" Id. (quoting Neely v. Federal Bureau of Investigation, 208 F.3d 461, 464 (4th Cir. 2000)). The fact that the names in question here are names of federal officials and not state or local officials does not alter the inquiry, and there is no need for the DOJ to show a particularized concern that the individuals named will be harassed or embarrassed: the mere confirmation that particular individuals were involved in the investigation presents the risk Exemption 7(C) is intended to guard against.

3

Case 6:13-cv-03380-ODS   Document 29   Filed 12/11/14   Page 3 of 6

The presence of a privacy interest does not end the inquiry.  "Where privacy concerns addressed by Exemption 7(C) are present, the exemption requires the person requesting the information to establish a sufficient reason for the disclosure."  <u>Favish</u>, 541 U.S. at 172.  This inquiry is an exception to "the usual rule that the citizen need not offer a reason for requesting the information must be inapplicable."  <u>Id</u>.  "To overcome a legitimate claim of privacy interests under Exemption 7(C), a requester must show that 'the public interest sought to be advanced is a significant one,' and that 'the information is likely to advance that interest.'"  <u>Peltier v. Federal Bureau of Investigation</u>, 563 F.3d 754, 762 (8th Cir. 2009) (quoting <u>Favish</u>, 541 U.S. at 172).  Marks attempts to make this showing by contending he desires to shed light on Government impropriety.  Specifically, he alleges the documents will somehow demonstrate an impropriety in AUSA Hyde's investigation.  Marks's speculation is insufficient; he "must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred," <u>Favish</u>, 541 U.S. at 174, and this he has not done.  Marks only repeats his prior assertions that the other inmates' conduct was serious and amounted to an escape and that the information he provided was accurate.  None of these allegations demonstrate misconduct or impropriety on the Government's part.  The prior proceedings further demonstrate that no impropriety occurred: AUSA Hyde spoke with BOP officials and made a decision as to the propriety of filing a motion for downward departure.[3]  Marks also implies the documents might be important to his efforts to compel the filing of a Motion for Downward Departure, but this is not a public interest sufficient to overcome the privacy concern.  "[A] prisoner may not override legitimate privacy interests recognized in Exemption 7(C) simply by pointing to the public's interest in fair criminal trials or the even-handed administration of justice."  <u>Peltier</u>, 563 F.3d at 764.  If the contrary were true, every defendant and every target of an investigation would be able to overcome the privacy interest, "FOIA would be employed as a supplemental discovery mechanism in criminal cases, and the protection of privacy interests in Exemption 7(C) would be virtually eliminated."  <u>Id</u>.

---

[3] Lest there be any doubt or confusion, the Court also states that nothing in the notes it has reviewed *in camera* undermine its confidence in the prior rulings regarding Marks's quest for a downward departure.  To the contrary, AUSA Hyde's notes confirm the Court's prior conclusions.

Exemption 7(F) protects against risks to "the life or physical safety of any individual." Exemption 7(F) would not justify any greater withholding of information than Exemption 7(C), so in light of the Court's discussion of Exemption 7(C) there is no need to discuss Exemption 7(F) further.

II.

The Court previously directed the DOJ to respond to Marks's contention that the material had been released into the public domain and thus could not be withheld. Cf. Cottone v. Reno, 193 F.3d 550, 554 (D.C. Cir. 1999) ("Under our public-domain doctrine, materials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record."). Having considered the DOJ's arguments, the Court agrees that the public disclosure (or public domain) doctrine does not apply. The doctrine can only apply if the Court is "confident that the information sought is truly public and that the requester [will] receive no more than what is publicly available before we find a waiver." Students Against Genocide v. Dep't of State, 257 F.3d 828, 836 (D.C. Cir. 2001) (quotation omitted). The Court's *in camera* review reveals that AUSA Hyde's notes provide more information than has been disclosed during the prior hearings so the previous disclosures do not bar the DOJ's invocation of FOIA exceptions.

III.

The DOJ's arguments justify withholding the names in AUSA Hyde's notes and letter, as well as other identifying information (such as phone numbers). However, the DOJ's arguments do not justify withholding the entirety of her notes and letter. A review of the cases regarding Exemption 7(C) confirms this conclusion. For instance, in Hulstein the DEA provided the reports in question but redacted the names in order to protect the individuals' privacy.

The privacy concerns arising from release of the names can be obviated by redacting that information. Revealing the information with the names redacted will not

implicate any privacy concerns. Therefore, the Court is inclined to rule that the DOJ must release AUSA Hyde's notes and letter but can first redact (1) the names of the people with whom she spoke, (2) contact information and job titles for those people, and (3) all information related to other cases. Pursuant to Rule 56(f), the DOJ shall have thirty days to file a response indicating why judgment should not be entered in this manner. Marks shall have thirty days thereafter to respond to the DOJ's response.

IT IS SO ORDERED.

DATE: December 11, 2014

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT